## Case No. 15,139.

### UNITED STATES v. FOSSAT.

[Hoff. Land Cas. 376.] [1]

District Court. N. D. California.  June Term. 1858.

MEXICAN LAND GRANT—DETERMINATION OF BOUNDARIES.

The southern, western and eastern boundaries of the tract granted to Justo Larios declared. leaving the northern boundary to be determined by quantity.  The former opinion [Case No. 15,-137], with respect to the southern boundary, maintained.

[This was a claim by Charles Fossat for one league of land in Santa Clara county, confirmed by the board. and appealed by the United States.  Affirmed by the district court for one league, "more or less."  Case No. 15,-137.  Upon appeal, the supreme court limited the grant to one league within the designated east, west, and south boundaries, the north boundary to be determined by survey.  Case remanded.  20 How. (61 U. S.) 413.  In the location of the designated boundaries a continuance was allowed the United States in order to take further testimony. Case No. 15,138.  It is now heard upon the question of the location of the boundaries in conformity with the opinion of the supreme court.]

P. Della Torre, U. S. Atty., and A. C. Peachy, for the United States.
A. P. Crittenden, for appellee.

HOFFMAN, District Judge.  When this case was first submitted to this court on appeal from the board of land commissioners, it was considered that the four boundaries of the tract were indicated with reasonable certainty by the grant and accompanying diseño.  It did not escape the observation of the court that only three of those boundaries were designated in the grant, viz., the southern, the western and the eastern; but it was thought that the description of the tract in the decree of concession as the "Cañada de los Capitancillos," and the delineation on the diseño of the two ranges of hills within which it was contained, sufficiently indicated

the location of the northern boundary, the mention of which was omitted in the grant. The court was confirmed in this view by the representation of the petition, on the diseño, that the tract delineated upon it was of the extent of one league, a little more or less, indicating, as it seemed, that he solicited not a specified quantity, but a particular tract, the estimated area of which he declared to the governor.  When, therefore, the governor granted to him the tract solicited, and described it as "of the extent of one league, a little more or less, as explained by the map," it seemed to the court necessary, to carry into effect the intention of the grantor, to confirm to the claimant the tract delineated on the map, even though, as anticipated by the governor, its extent might be "a little" more than one league; provided such excess did not exceed a fraction of the usual unit of measurement in colonization grants, viz., one league; or in other words, provided that the quantity over and above one league was such as might reasonably be deemed to have been asked for by the petitioner and granted by the governor, under the description "a square league, a little more or less."  The clause in the third condition, by which the surplus was reserved to the nation, usually called the sobrante clause, was disregarded by the court, that clause being a formula generally, and almost invariably inserted in all grants, without reference to their nature, and being not unfrequently found in grants where all the boundaries are distinctly defined, and even in grants where no boundaries are mentioned, but which are for tracts of a specified length and breadth, where obviously no sobrante can remain.

On the hearing, the location or existence of a northern boundary was not brought in question, but the discussion chiefly if not exclusively turned upon the location of the southern boundary—the right of the court to locate which by its decree was denied by the attorney for the United States.  In that view, however, the court did not coincide; but by its decree it defined and located the southern boundary, and thereby decided the most important if not the only point discussed on the hearing.

The cause having been appealed to the supreme court, the views of this court were in some particulars found to be erroneous.  By the judgment of that court it is decided, not only that in the grant itself there is no call for a northern boundary, but that "there is no reference to the diseño for any natural object or other descriptive call to ascertain it; that the grant itself furnishes no other criterion for ascertaining it than the limitation of quantity expressed in the third condition, which thus becomes a controlling condition in the grant."  The mention of quantity as "a league, a little more or less," the court regards (after rejecting the words "a little more or less," as having no meaning in a system of location and survey like that of

---

[1] [Reported by Numa Hubert. Esq., and here reprinted by permission.]

the United States) as so explicit as to render improper any reference to the petition and the diseño, or any inquiry as to "whether the name Capitancillos had any significance as connected with the limits of the grant." As to the propriety of the location of the southern boundary by this court, the supreme court expresses no opinion, but the grant is confirmed for one league of land, to be taken within the southern, eastern and western boundaries mentioned therein, and the cause is remitted that this court may declare those boundaries from the evidence on file and such other evidence as may be produced before it. As this court had already declared the southern and only disputed boundary of the tract, the remanding of the cause, with the directions above stated, appeared to this court to be an instruction to review and reconsider its opinion on that point, and also to allow further evidence to be taken in relation to it. The cause having been originally heard with the consent of both parties, and without any suggestion that further evidence was desired or attainable, the application on the part of the United States for leave to take further testimony was resisted on the part of the claimant. It seemed, however, to the court, that the directions of the supreme court clearly contemplated that such testimony should be taken, if offered, and that the obedience due from this court to the mandate of its superior required it to permit either side to offer such further testimony as might be desired. Additional testimony has therefore been taken, and it now remains for the court again to declare the boundaries as originally declared in its former decree, or differently, if on reconsideration that decree should appear to be erroneous, or if the additional testimony is such as to induce it to change its opinion.

In the opinion heretofore delivered, it was observed—"The evidence shows that the tract called Capitancillos is a valley lying along an arroyo or brook. On the southerly side extends a range of hills, running from east to west. At their eastern extremity, where they are intersected by the Alamitos, these hills attain considerable elevation, but they decline in height towards the west, where they reach and are turned by the Arroyo Seco. Behind this ridge or cuchilla the main sierra or mountain chain raises itself to a great height, and is separated from the ridge of lomas bajas, already spoken of, by the two streams mentioned. These streams rise at an inconsiderable distance from each other, and flowing in opposite directions, between the sierra and the lomas bajas, they turn the eastern and western extremities of the latter and debouch into the plain. Upon the slopes of the ridge of low hills, as well towards the valley on the north as towards the streams behind it on the south, the best or most permanent grazing is to be found, and in this ridge are situated the valuable quicksilver mines, the existence of which gives to this inquiry its chief importance." To this description it may

be added, that the range of low hills are not throughout their whole length entirely detached from the sierra, but are connected with it at one point by a spur or ridge running nearly at right angles to the general direction of the sierra and the lomas. This ridge is at its lowest point 1100 feet above the level of the valley. The height of the Almaden peak at the eastern extremity of the lomas is about 1500 feet above the level of the valley, but the lomas as they extend towards the west diminish in height, and are separated by various depressions, which permit easy access from the valley on the north to the Arroyo Seco at the base of the sierra. The average width of the ridge is one mile and four-tenths, and though at the Almaden peak the descent to the valley is abrupt, yet further to the west the diminished height of the hills, and the frequent depressions in the ridge, permit the valley to be reached at many points by easy and gentle declivities. It is proper to add that after the proofs were submitted, the judge, at the suggestion of the district attorney, and accompanied by that officer and the representative of the claimant, visited the premises in order by personal inspection to become acquainted with its topography, and to be able more accurately to understand and to appreciate the testimony.

The question, then, to be determined is— What is the southern boundary designated in the grant? The grant itself describes the land as bounded by the "sierra:" but the question recurs—What is the natural object so designated? Is it the main chain to the south of the lomas bajas, or is it the lomas bajas themselves? The natural meaning of the term "sierra" would seem to point to a great mountain chain, rather than to a range of hills parallel to it and separated from it, except at one point where the two ranges are connected by a narrow ridge or divide. On the diseño presented by Larios, the sierra is described as the "Sierra del Encino." The very remarkable oak tree from which this name was evidently derived is situated on the main chain of mountains, and is a conspicuous object from all parts of the valley. That the "sierra" mentioned in the grant is that on which this tree is situated, cannot be disputed; but still the question arises—Was the term "sierra" or "Sierra del Encino" used by the grantor to designate the lofty chain of mountains on which the oak tree is situated, as distinguished from the lomas bajas or lower ridge to the north of it? Or did he intend to include within it both ranges, and to apply the term as well to the lomas bajas as to the larger mountains behind them? In a certain sense the lomas bajas are evidently a part of the sierra with which they are connected, as has been explained; but the question is not whether they form a part of or belong to the sierra geologically or topographically, but whether they were so known and recognized and so treated by the

governor when he described the tract as bounded by the sierra.

On the part of the claimant, numerous witnesses testify that the part of the Sierra Azul on which the oak tree is situated is called Sierra dei Encino, but that the low range of hills on the south of it and separated from it by the creeks was never known as the sierra. That they were, until the discovery of the mine, called lomas bajas, and subsequently "Las Lomas de Mina de Luis Chaboya," or "Cuchilla de la Mina de Chaboya." They describe the range known as the "sierra" as rising from the streams, and the latter as running between the sierra and the ridge known as the Cuchilla de la Mina. No less than nine witnesses, many of whom have lived in the neighborhood from twenty to forty years, testify to these facts, and to their testimony may be added that afforded by the diseño of Berreyesa, who at the time he presented it had been established in the cañada about nine years. On this map the two ranges of hills are distinctly delineated separated by a broad valley—far broader than the ravine actually existing. The lower range is inscribed "Lomas Bajas," while the upper is marked "Sierra Azul;" thus indicating that in 1842 and at the time when the petitions of both Larios and Berreyesa were before the governor, and before the question had any importance, a marked discrimination was made even in the rude diseño presented by the applicant between the ridge of lomas bajas, and the sierra behind it.

Since the case has been remanded, the testimony of three witnesses on this point has been taken by the United States. Antonio Suñol testifies that he never heard of the Sierra del Encino, nor of any range of hills called the "Cuchilla de la Mina de Luis Chaboya." That the mouth of the mine is in the "Sierra Azul." On his cross-examination he states that the ridge has been called "Lomas" or "Lomas Muertas de la Sierra Azul," and that after the mine was discovered, "we always said the mine of Chaboya which is in the Sierra Azul." José Maria Amador testifies that he does not know the Sierra del Encino, nor "La Cuchilla de le Mina de Luis Chaboya." That the mine is situated on the "Lomas Bajas de la Sierra Azul." "It is in the Sierra Azul itself. The sierra descends regularly; there is no breach nor separation in it. The mine is in a low loma. It is all known as the Sierra Azul, from the foot to the top of it." José Romero testifies that he does not know the Sierra del Encino, nor the Cuchilla de la Mina de Luis Chaboya. That the name of the mountain on which the mine is situated is the "Sierra Azul." On his cross-examination, in reply to an inquiry as to the name of the creek "which passes between the Guadalupe mine and the sierra," he states its name to be the "El Arroyito del Corral del Defunto

Rafael." That he knows the loma where the Guadalupe mine is situated, and the sierra in which it is. That "loma and sierra mean the same thing with us."

It is unnecessary to comment on the testimony of these witnesses, for the preponderance of evidence is clearly against the accuracy of their statements, or their recollection.

If then we were to fix the southern boundary of this tract by the calls of the grant alone, the evidence would leave no room for doubt that the grantor meant by the term "sierra" in the grant the lofty chain of mountains on which the oak tree is situated, and which being for the most part covered with chemisal, presents an azure hue at a distance; rather than the lower and parallel ridge known as the "Lomas Bajas" or "Cuchilla de la Mina," and which is for the most part covered with wild oats and suitable for grazing. But the great difficulty in the case is presented by the diseño which accompanies the expediente of Justo Larios. On this diseño a single range of hills, inscribed "Sierra del Encino," is rudely delineated; from this range the two creeks are represented as debouching into the plain. If this sierra be the main sierra, the lomas bajas are entirely omitted on the sketch. I have been much impressed with the very able and elaborate argument on this point submitted by the counsel who appeared for the United States, as also by the testimony of many surveyors that, guided by this map alone, and crossing the valley in a southerly direction, they would stop or fix the southern limit of the tract at the foot of the first hills which rise from the valley—that is, at the foot of the "Lomas Bajas." It is urged that the southern boundary as shown by this diseño is a line drawn at the foot of the range inscribed "Sierra del Encino," and from one creek to the other, and not along the course of either. That if the range delineated was intended to represent the main sierra, the arroyos, and especially the Seco, would have been represented as running below or to the north of it, and not debouching from it; and that the lomas bajas would not have been omitted. It may perhaps be admitted, that if we were to be guided by the diseño alone, it would not be easy to avoid the conclusion so earnestly and ingeniously pressed upon the court in the brief submitted by the counsel for the United States. The indications, however, afforded by the diseño, are not free from all ambiguity. On that sketch the two streams are represented as debouching from the hills at points situated on a line nearly horizontal. The map of Lewis, exhibited on the part of the United States, shows that the Arroyo de los Alamitos, called on the Larios diseño Arroyo de los Capitancillos, issues from the foot hills or lomas bajas at a point considerably to the north of that where the Arroyo Seco turns the western extremity of those

hills and debouches into the plain. If a line then be drawn from the point where the Alamitos debouches, to that where the Seco turns the lomas, it would depart considerably from a horizontal line. Again: The space inclosed between the creeks and the sierras is represented on the Larios diseño as not quite twice as long as it is broad. But if the sierra on the diseño be taken to mean the lomas bajas, the. map of Lewis shows that the tract between the Alamitos and the Seco on the east and west, and the Capitancillos and the foot of the lomas on the north and south, is about four times as long as it is broad. Again: The Arroyo de los Capitancillos is represented on the Larios diseño as running towards the south-east diagonally across the valley, and then turning towards the south and running in a southerly direction perpendicularly to the valley, and nearly parallel to the Arroyo Seco for a considerable distance, until it reaches the sierra. But if the sierra which it reaches was intended to be the lomas bajas, it should be drawn as meeting them while running in a south-easterly or diagonal course. No part of its southerly or perpendicular course should be represented. The map of Lewis shows that the course of the stream from a point above or near the hacienda is delineated on the Larios diseño with tolerable accuracy, and that from that point it flows in a northerly direction perpendicularly to the valley for a considerable distance, and it is only after turning and leaving the lomas bajas that it takes a direction diagonally across the valley. If, then, the red line drawn on Lewis' map as the southern boundary of the tract were drawn on the Larios diseño to the corresponding point of the Capitancillos, it would strike the latter not far from the letter "A" on that diseño, and that portion of the stream flowing in a north and south direction would be excluded. Again: By looking on Lewis' map it will be seen that the Arroyo Seco, after running in a westerly direction along the base of the main sierra, and between it and the lomas, on reaching the end of the latter makes a sudden bend to the north and debouches into the valley at a point very near the base of the sierra; in other words, that at this point the flat or valley land extends nearly up to the base of the main sierra. If, then, a line be drawn from this point to the most southerly point of the Arroyo de los Alamitos, or Capitancillos on the diseño of Larios, it would nearly coincide with the base of the sierra as contended for by the claimant; and would moreover be almost a straight line, and in this respect correspond with the indications of the diseño better than the very sinuous and irregular line which is found by following the base of the foot hills which project into the valley. For it is to be observed that neither of the lines run by Lewis as the southern boundary of the tract follow what is claimed to be the

boundary indicated by the diseño, viz., the base of the lomas; but run upon the sides of and over those hills at a considerable and apparently arbitrary distance from their base. The slightest comparison between the diseño of Larios and a map of the country shows the former to be in many other respects inaccurate and defective. The angle of the creeks at which the eastern boundary commences is not laid down, and the lomita which is also called for in the description of that line does not appear. It is therefore no very extravagant supposition that the lomas bajas were also omitted, particularly when the circumstances under which the diseño was drawn, as detailed by Petronillo Rios, are considered.

The foregoing observations, I think. warrant me in saying that the diseño of Larios does not afford those clear, certain and unmistakeable indications of the location of the southern boundary contended for by the counsel for the United States. But in determining this question we are not at liberty to confine our attention to the Larios diseño alone. The record shows that Justo Larios and Berreyesa had occupied different portions of the Cañada de los Capitancillos for many years before the date of their applications to the governor for their respective grants. Between them a dispute as to their boundaries had arisen. Before the grant to either was issued, they appeared before José Z. Fernandez and agreed upon the line which should form their common boundary. The description of this line, as given in the report of Fernandez, was inserted in both grants, and the line was marked by that officer on the diseño of Berreyesa "as being the more exact." In the grant to Larios the eastern boundary is described as the rancho of citizen Berreyesa, "which has for boundary the angle," etc., and in the grant to Berreyesa his western boundary is in like manner described as "the rancho of citizen Justo Larios, which has for boundary the angle," etc. The eastern boundary of Justo Larios is thus indirectly described in his own grant. but directly in that of Berreyesa; while the western boundary of the latter is in like manner indirectly described in his own grant, but directly in that of Larios. At the time of making the grant the governor had probably before him both diseños, but certainly that of Berreyesa, on which the boundary line described by him in both grants had been marked by Fernandez for his information. In determining therefore the boundaries of Justo Larios, it seems to me not only proper but necessary to recur to the grant of Berreyesa, where alone the boundary of Justo Larios is described as such, and to the diseño of Berreyesa, upon which it was marked "as being more exact." The governor did not grant to Justo Larios the tract delineated on his diseño. viz., the land between the Arroyo Seco and that of Capitancillos, or a line to the east of the latter. He granted the land between the Arroyo Seco and a line

drawn from the angle of the creeks, passing by the eastern "falda" of the "lomita in the centre of the cañada to the sierra;" and this line was marked on the Berreyesa diseño, and at a considerable distance to the west of the Capitancillos or Alamitos. In declaring this boundary, therefore, which was different from that solicited by Larios and indicated on his diseño, we are compelled to resort to the diseño of Berreyesa, which becomes quoad hoc the diseño to which the grant refers. On the Berreyesa diseño the two ranges of hills are rudely but unmistakeably delineated. The first or most northern are inscribed "Lomas Bajas," while the higher ridge to the south is inscribed "Sierra Azul." The valley represented as lying between them, though its width is grossly exaggerated, yet serves to indicate by that very exaggeration the discrimination in the grantor's mind between the sierra and the lomas bajas. The dotted line commencing at the angle of the creeks is produced across the lomas bajas, across the intermediate valley, and the Alamitos represented as flowing through it to the base of the main sierra If this line be the eastern boundary of Justo Larios, as I think it must be considered, there can be no doubt as to the range of mountains intended by the term "sierra" in his grant.

It is urged that Berreyesa had applied not only for the Cañada de los Capitancillos, but for all the hills which pertain to it; whereas Justo Larios petitioned for a part of the cañada alone. That therefore in the grant to Berreyesa, and on his diseño, the line was extended so as to include the low hills solicited, but that such an extension ought not to be made in favor of Larios, who solicited the cañada alone. This argument assumes that the term cañada as used in these grants does not include the low hills at the foot of the sierra, but that it is bounded and limited by them. But the language of the petition of Berreyesa referred to seems to convey the contrary idea, for it speaks of the low hills "which belong or pertain to the said cañada." He does not ask for the cañada and also a portion of the sierra, but for the cañada and the low hills pertaining to it. It is surely not reasonable to say that he considered and asked for the low hills as not belonging to or a part of the cañada he solicited. Again: the governor, who with respect to Berreyesa, it is admitted, intended to grant the low hills, describes the tract granted to him "as a part of the place know as the Cañada de los Capitancillos," thus showing that in his apprehension at least the place known as the Cañada de los Capitancillos did include the low hills solicited. In the grant to Larios it is described as the "place known by the name of Capitancillos"—the word cañada being omitted in the grant though it is inserted in the decree of concession. Again: the governor, confessedly intending to include within the grant to Berreyesa the lomas or low hills, bounds his grant by the sierra. With both petitions and both

diseños before him, and with his attention directed to the discrimination between the sierra and low hills belonging to the cañada, he nevertheless uses the same term "sierra" in describing the boundary of Larios. Can we infer that in the grant to Berreyesa he meant by this term one natural object, and in that to Larios another? I think not. The sierra referred to in both grants must be the same, and as that intended in the Berreyesa grant is unmistakeable, we are enabled to fix with corresponding certainty the sierra referred to in the grant to Justo Larios.

I have given to this case much attention. I have endeavored to decide it uninfluenced by the previous opinion of this court. Upon the best consideration I have been able to give to the questions involved. I have not been able to discover that that opinion was erroneous.

The remaining point to be considered is as to the form of the decree. In the opinion of the supreme court (20 How. [61 U. S.] 426), it is said: "The southern, western and eastern boundaries of the land granted to Larios are well defined, and the objects exist by which those limits can be ascertained. There is no call in the grant for a northern boundary, nor is there any reference to the diseño for any natural object, or other descriptive call to ascertain it. The grant itself furnishes no other criterion for determining that boundary than the limitation as expressed in the third condition. * * * If the limitation of quantity had not been so explicitly declared, it might have been proper to have referred to the petition and diseño, or to have inquired if the name Capitancillos had any significance as connected with the limits of the tract, in order to give effect to the grant. But there is no necessity for additional inquiries. The grant is not affected by any ambiguity. * * * The grant to Larios is for one league of land. to be taken within the southern, eastern and western boundaries designated therein, and which is to be located at the election of the grantee or his assigns, under the restrictions established for the survey and location of private land claims in California by the executive department of this government." The district court is there directed to declare the external boundaries designated in the grant. From the foregoing it is, I think, evident that the supreme court considered the southern. western and eastern boundaries were alone designated in the grant. and that as the limitation of quantity was explicit, and there was no ambiguity in the grant, the northern boundary was to be determined by quantity alone; and that it was "not authorized to depart from the grant to obtain evidence to contradict, vary, or limit its import." When, therefore, this court has, pursuant to the directions of the supreme court, declared those three external boundaries, it has declared "the southern, western and eastern boundaries of the land granted to Larios," and the remaining boundary is to be ascertained by quantity. It is urged on the part of the Unit-

ed States that the league is to be taken within the three boundaries named, but is not of necessity bounded by them; that its location within them is to be subject to the restrictions established by the executive; and that the northern boundary of the league is to be determined by the northern boundary of the tract within which it is to be located. The supreme court undoubtedly say that the league is to be located within the three boundaries mentioned. But a reference to the preceding part of the opinion dispels any doubt which might be suggested by this expression. It is said, unequivocally, that the southern, western and eastern boundaries of the land granted to Larios—not of the tract within which the league granted to him is to be taken—are well defined, and the supreme court explicitly declare that the northern boundary is to be determined by the limitation of quantity alone. "The grant itself furnishes no other evidence for determining that boundary than the limitation of quantity as expressed in the third condition. This is a controlling condition in the grant;" and they add that no additional inquiries to ascertain that boundary (the grant being free from ambiguity) are necessary or authorized by law. It seems to me that the import of this language is unmistakeable, and the land granted to Larios must be decreed by this court to be but one league of land, bounded by the three external boundaries mentioned in the grant, as the same are ascertained and declared in this opinion. The fourth or northern boundary to be ascertained by quantity, and to be run at the election of the grantee or his assigns, under the restrictions established for the location and survey of private land claims in California by the executive department of the government of the United States.

[NOTE. From the decree entered in this case an appeal was taken by the United States to the supreme court. The appeal was on motion dismissed, upon the ground that the decree of the district court was not a final decree. 21 How. (62 U. S.) 446. Subsequently a survey made and returned into the district court was, with modifications, approved. Case No. 15,140.]